UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:13-CV-00084-TBR

WESLEY BILLINGSLEY,                                                         Plaintiff
*as personal representative and next of kin of*
ROBERT R. BILLINGSLEY, *deceased*

v.

ALBERICI CONSTRUCTORS, INC., *et al.*                                    Defendants

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendants Alberici Constructors, Inc. (Alberici); URS Corporation (URS); URS Energy & Construction, Inc. (URS E&C); and Washington Group/Alberici Joint Venture's (Washington Group) Motion for Summary Judgment, (Docket No. 29), which, with leave of Court, has been joined in by Defendant United States, (Docket Nos. 36; 39). Plaintiff Wesley Billingsley, as personal representative and next of kin of Robert R. Billingsley, deceased, has responded, (Docket No. 32), and Defendants Alberici, URS, URS E&C, and Washington Group have replied, (Docket No. 40). This matter now is ripe for adjudication.

BACKGROUND

The essential facts pertinent to Defendants' instant Motion are largely undisputed. At the time of his death, Plaintiff's decedent, Robert R. Billingsley (Billingsley), was working at the Olmsted Dam Project on the Ohio River when he fell and was crushed between two barges. Billingsley was employed by Washington Group

as a deckhand aboard the M/V LIPSCOMB, a tugboat owned by the United States. The United States also owned the barges with which Billingsley was working at the time of his death. Billingsley was unmarried and had no children or other dependents. Plaintiff Wesley Billingsley is Billingsley's father but was not dependent on Billingsley at the time of Billingsley's death.

Plaintiff brought this survival and wrongful death action on May 31, 2013, against a number of entities believed to be Billingsley's employer at the time of his death. Plaintiff alleges that Billingsley was a seaman for purposes of the Jones Act and seeks damages under both that Act and the general maritime law. Plaintiff alleges that Billingsley's death was caused by the Defendants' negligence as well as the unseaworthiness of the barge from which Billingsley fell. Plaintiff seeks the following damages: (1) Billingsley's predeath physical and mental pain and suffering, (2) the pecuniary value of Billingsley's estate, (3) "loss of the services, assistance, aid, society, companionship, familial relationship, and the love and affection of and/or from [Billingsley]," and (4) funeral and burial expenses. (Docket No. 1, at 6.)

STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir.

1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; he must present evidence on which the trier of fact could reasonably find for him. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Still, "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

DISCUSSION

As an initial matter, Plaintiff concedes that Defendants Alberici, URS, and URS E&C were not Billingsley's employer and may properly be dismissed from this action. (Docket No. 32, at 3-4.) As such, the Court will dismiss Plaintiff's claims against these Defendants and address its discussion here to the remaining Defendants, Washington Group and the United States.

Washington Group, joined by the United States, presently moves for summary judgment limiting the scope of Plaintiff's damages to Billingsley's predeath pain and suffering. In a related argument, Washington Group insists that Plaintiff is barred from

asserting a wrongful death claim here because Plaintiff was not Billingsley's dependent at the time of Billingsley's death. Plaintiff's claims can best be addressed by delineating the several causes of action asserted. The Court reads Plaintiff's Complaint and Response as bringing this action based on two theories: (1) negligence, under both the Jones Act and the general maritime law; and (2) unseaworthiness, under the general maritime law. Accordingly, the Court will consider in turn each of Washington Group's arguments for summary judgment as they relate to these claims.

I.

Historically, the general maritime law once followed the common law rule that tort causes of action died with the injured person; thus, an injured sailor could bring an action for unseaworthiness or negligence, but his survivors had no remedy. *See The Harrisburg*, 119 U.S. 199 (1886). In 1920, Congress partially overruled *The Harrisburg* through the enactment of the Death on the High Seas Act, 46 U.S.C. §§ 30301–30308 (formerly codified at 46 U.S.C. app. §§ 761-768), which provided a wrongful death remedy for those killed on the high seas, and the Jones Act, 46 U.S.C. § 30104 (formerly codified at 46 U.S.C. app. § 688), which provided a wrongful death remedy for the death of a seaman.

The United States Supreme Court eventually overruled *The Harrisburg* in *Moragne v. States Marine Lines, Inc.*, holding that an action for wrongful death is available under the general maritime law "for death caused by violation of maritime duties." 398 U.S. 375, 409 (1970). *Moragne* involved a longshoreman killed while working aboard a vessel in navigable waters off the coast of Florida. The plaintiff, who was the decedent's widow, brought suit claiming damages based on theories of

unseaworthiness and negligence. The Court permitted the plaintiff to proceed on an unseaworthiness theory, thereby recognizing a wrongful death remedy under the general maritime law for deaths occurring within state territorial waters. The Supreme Court since has extended the general maritime action for wrongful death recognized in *Moragne* to encompass negligence claims for the death of a maritime worker. *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 820 (2001).

In *Miles v. Apex Marine Corp.*, the Supreme Court addressed the type of damages recoverable under a general maritime law wrongful death claim. 498 U.S. 19 (1990). *Miles* involved the death of a Jones Act seaman aboard a vessel docked in state territorial waters. The seaman's mother and administratrix of his estate brought a negligence action under the Jones Act and an unseaworthiness action under the general maritime law. She sought damages for, among other things, loss of society resulting from the death of her son. *Id.* at 21-22. Noting that the Jones Act limited recovery to pecuniary losses, the *Miles* Court held that the plaintiff could not recover for loss of society in a Jones Act wrongful death action. *Id.* at 32-33.

Plaintiff concedes in his Response that his claims for loss of society are not available under a Jones Act negligence claim. (Docket No. 32, at 12.) Accordingly, the Court is satisifed that he cannot recover for loss of society on his negligence theory.

II.

Thus, the issue that remains is whether Plaintiff can recover nonpecuniary damages under this unseaworthiness claim. *Miles*, dealing with a scenario remarkably analogous to the one here, answered this question in the negative. As noted above, the

seaman's mother in *Miles* brought a negligence action under the Jones Act and an unseaworthiness action under the general maritime law. The Court in *Miles* expressly concluded that nonpecuniary damages were unavailable under a general maritime law unseaworthiness theory:

> The general maritime law claim here alleged that [the decedent] had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.

*Miles*, 498 U.S. at 32-33.

The Sixth Circuit, in an *en banc* decision applying *Miles*, reached a similar conclusion in *Szymanski v. Columbia Transportation Co.*, 154 F.3d 591, 595-597 (6th Cir. 1998) (en banc). In *Szymanski*, the court held that damages not compensable under the Jones Act were likewise not compensable under a theory of unseaworthiness. After noting that claims brought under the Jones Act and claims of unseaworthiness brought under the general maritime law are distinct causes of actions, the court explained:

> However, it is also necessary to consider the nature of the *injuries* for which a plaintiff may seek a remedy under the two causes of action. We conclude that, despite their other differences, the two causes of action are uniform in the injuries they reach. Where an injury is not remediable under the Jones Act . . . neither can the doctrine of unseaworthiness offer redress.

*Id.* at 595 (emphasis in original). The *en banc* court went on to conclude:

> A seaman's claim under either the Jones Act or the unseaworthiness doctrine is fundamentally a single cause of action, and remedies under one must be congruent with remedies under the other. If no damages are permitted under the Jones Act, then an unseaworthiness claim cannot supply them either.

*Id.* at 596.

Plaintiff relies primarily on *Atlantic Sounding Co. v. Townsend*, 557 U.S. 404 (2009), to argue that loss of society and related nonpecuniary damages remain available in actions brought under the general maritime law. Plaintiff misreads *Atlantic Sounding*. In that case, the Supreme Court considered whether an injured seaman could recover punitive damages for his employer's willful failure to pay maintenance and cure. The Court concluded that the plaintiff could recover punitive damages because nothing in either *Miles* or the Jones Act prohibited such damages. *Id.* at 407. In distinguishing *Miles*, the Court noted: "*Miles* did not address either maintenance and cure actions in general or the availability of punitive damages for such actions. The decision instead grapples with the entirely different question whether general maritime law should provide a cause of action for wrongful death based on unseaworthiness." *Id.* at 419. Unlike wrongful death actions, a general maritime law action for maintenance and cure and the remedy of punitive damages were traditionally available and not addressed by the Jones Act or other congressional action. In discussing this point, the Court explained:

> Congress had chosen to limit . . . the damages available for wrongful-death actions under the Jones Act and DOHSA, such that damages were not statutorily available for loss of society or lost future earnings. The Court thus concluded that Congress'

> judgment must control the availability of remedies for wrongful-
> death actions brought under general maritime law[.]
>
> The reasoning of *Miles* remains sound.

*Id.* at 419-20 (citations omitted).

Since *Atlantic Sounding*, a number of courts have continued to find that loss of society damages are not recoverable for wrongful death under the general maritime law. *See, e.g.*, *Doyle v. Graske*, 579 F.3d 898, 906-08 (8th Cir. 2009); *Hackensmith v. Port City S.S. Holding Co.*, 938 F. Supp. 2d 824, 829 (E.D. Wis. 2013); *In re Int'l Marine, L.L.C.*, 2013 WL 3293677, at *9 (E.D. La. June 28, 2013).

Therefore, based on this Court's reading of *Miles* and *Atlantic Sounding*, and in view of the binding precedent of this circuit (which the Court does not read as having been overruled by *Atlantic Sounding*), Plaintiff cannot recover the nonpecuniary damages he seeks based on a theory of unseaworthiness.

III.

Washington Group next argues that Plaintiff is barred from asserting a wrongful death claim here because he was not Billingsley's dependent at the time of Billingsley's death. To this end, Washington Group urges that any recovery should be limited to a survival action for Billingsley's predeath pain and suffering. In support of its position, Washington Group points to the Northern District of Ohio's decision in *In re Cambria S.S. Co.*, 353 F. Supp. 691 (N.D. Ohio 1973), *aff'd sub nom. Complaint of Cambria S.S. Co.*, 505 F.2d 517 (6th Cir. 1974). Plaintiff acknowledges that he was not dependent upon Billingsley. Plaintiff argues, however, that *In re Cambria* merely stands for the proposition that a nondependent relative cannot recover for loss of prospective

inheritance in a *Moragne* wrongful death action and does not prohibit the recovery of nonpecuniary damages. (*See* Docket No. 32, at 12.)

The Second Circuit, quoting the Fifth Circuit, succinctly outlined the distinction between survival actions and wrongful death actions as follows:

> In a survival action, the estate or successors of a deceased person are allowed to prosecute a claim for personal injury that the deceased himself would have had but for his death. In a wrongful death action, the victim's dependents, not the victim, are allowed to recover for the harms they personally suffered as a result of the death, independent of any action the decedent may have had for his own personal injuries.

*Wahlstrom v. Kawasaki Heavy Indus., Ltd.*, 4 F.3d 1084, 1093 (2d Cir. 1993) (quoting *Miles v. Melrose*, 882 F.2d 976, 985 (5th Cir. 1989)).

Upon reviewing the scant case law that appears to have addressed this issue, the Court is satisfied that Plaintiff cannot maintain his instant wrongful death action. In a well-reasoned and detailed opinion, the Northern District of Ohio concluded that "there can be no recovery under a *Moragne*-type claim for non-dependent relatives." *In re Cambria*, 353 F. Supp. at 696. Noting (1) that the federal wrongful death statutes (as well as the vast majority of state wrongful death statutes) exclude nondependent relatives and (2) that maritime wrongful death actions are limited to pecuniary damages, the court reasoned:

> [R]ecovery [by nondependent relatives] would contravene the long and well-established congressional policy in this area and would be inconsistent with the expression represented in the vast majority of state wrongful-death statutes, which prohibit such a recovery. In addition, any recovery by non-dependent relatives is, by its very nature, speculative. Such a recovery would of necessity be based upon a prediction of the future intentions and

> family relationships of the deceased. . . . At the very best, such predictions involve speculative prognostications of a much more unreliable and chance character than those required in dependency claims, where there will usually be an established need of support or a legal obligation.
>
> We see the various federal and state wrongful death statutes as expressing a societal decision that the interest of non-dependent relatives is not so substantial as to require protection. The non-dependent relative is, by definition, independent of any contributions from the deceased.

*Id.* at 696-97. This reasoning finds support in more recent decisions by the Sixth Circuit. *See, e.g.*, *Anderson v. Whittaker Corp.*, 894 F.2d 804, 811 (6th Cir. 1990) (holding that a nondependent parent could not maintain claim for nonpecuniary damages such as loss of society).

Plaintiff offers little to refute the reasoning in *In re Cambria*. Moreover, as discussed *supra* Parts I & II, Plaintiff is not entitled to recover the nonpecuniary damages he seeks relative to Billingsley's death. As such, the Court finds that as a nondependent parent of the decedent, Plaintiff is not entitled to maintain a wrongful death action in this instance and, therefore, cannot recover for the pecuniary value of Billingsley's estate.

IV.

Plaintiff also has asserted a claim for Billingsley's predeath pain and suffering. This measure of damages, referred to as "survival damages," is available under the general maritime law. *Anderson v. Whittaker Corp.*, 692 F. Supp. 764, 773 (W.D. Mich. 1988) (citing *Azzopardi v. Ocean Drilling & Exploration Co.*, 742 F.2d 890, 893 (5th Cir. 1984)), *aff'd in relevant part by* 894 F.2d 804 (6th Cir. 1990). "Survival damages

may be sued for by any representative of a decedent, without reference to relationship, or dependence upon the deceased." *Id.* (citing *Evich v. Connelly,* 759 F.2d 1432, 1434 (9th Cir. 1985)). Defendants do not dispute that Plaintiff is entitled to seek survival damages for Billingsley's predeath pain and suffering.

It is unclear, however, whether Plaintiff is entitled to seek damages in the form or funeral and burial expenses. Although Defendants argue that Plaintiff should be limited to the above-mentioned survival damages, the parties have not briefed the issue whether funeral expenses are recoverable here. As such, the Court makes no ruling at this time whether Plaintiff is entitled to such damages.

## CONCLUSION

Therefore, having considered the parties respective arguments and being otherwise sufficiently advised, for the foregoing reasons;

IT IS HEREBY ORDERED that Defendants Alberici Constructors, Inc.; URS Corporation; URS Energy & Construction, Inc.; and Washington Group/Alberici Joint Venture's Motion for Summary Judgment, (Docket No. 29), which has been joined in by Defendant United States, (Docket Nos. 36), is GRANTED as follows:

(1) Summary judgment is entered in favor of Defendants Alberici Constructors, Inc.; URS Corporation; and URS Energy & Construction, Inc., as to each of Plaintiff's claims asserted against them, and these Defendants are hereby dismissed from this action;

(2) Summary judgment is entered in favor of Defendant Washington Group/Alberici Joint Venture and Defendant United States as to Plaintiff's wrongful death claim for the pecuniary value of Billingsley's estate and for loss of the services, assistance, aid,

> society, companionship, familial relationship, and the love and affection of and/or from Billingsley.

IT IS SO ORDERED.

Date:

cc: Counsel